UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERRY DOWELL BAILEY, Jr., #194330,                    Case No. 2:23-cv-250

           Plaintiff,                                   Hon. Robert J. Jonker
                                                      U.S. District Judge

  v.

UNKNOWN NELSON,

           Defendant.

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation addresses the Defendant's motion for summary judgment, ECF No. 36.   The Plaintiff did not file a response in opposition.

Plaintiff – state prisoner Jerry Dowell Bailey – filed suit pursuant to 42 U.S.C. § 1983 on December 26, 2023.   (ECF No. 1.)   In his verified complaint, Bailey alleges that Defendant Corrections Officer (CO) Nelson violated his Eighth Amendment right to be free from excessive force while he was incarcerated at Baraga Correctional Facility (AMF).   (*Id.*)

On April 17, 2025, Defendant Nelson filed a motion for summary judgment. (ECF No. 36.)   Nelson argues that Bailey (1) cannot satisfy the objective element of his excessive force claim because the use of a taser did not offend contemporary standards of decency or cause Bailey undue pain, and (2) that Bailey cannot satisfy the subjective component of his claim because Bailey cannot show that Nelson acted

1

for the purpose of causing Bailey pain so as to inflict cruel and unusual punishment on him.   (ECF No. 37, PageID.144.)

Plaintiff filed a motion for extension of time to file a response that was postmarked June 5, 2025.   (ECF No. 42, PageID.265.)   In his motion, Plaintiff explained that he was in need of an indefinite extension of time to respond to the Defendant's motion because he had not yet received requested medical records from Carson City Correctional Facility.   (*Id*.)   The undersigned denied the Plaintiff's motion for an extension of time reasoning that Plaintiff had not requested the extension until three weeks after the deadline had passed and had failed to show he did not file said response due to excusable neglect.   (ECF No. 43, PageID.267.)

In the opinion of the undersigned, there remains no genuine dispute of material fact as to Plaintiff's Eighth Amendment claim.   It is respectfully recommended that the Court grant the Defendant's motion for summary judgment.

## II.  Factual Allegations

On September 6, 2023, Bailey says that he entered the Baraga Six block yard, approached inmate Burton, and hit Burton on the side of and back of his head.   (ECF No. 1, PageID.4.)   Burton attempted to turn around to face Bailey, but Bailey prevented him from doing so by grabbing his arms.   (*Id*.)   Burton did not hit Bailey. (*Id*., Page ID.8.)   Bailey says that CO Nelson yelled for the pair to stop fighting and that they "made no further movements and waited for further instructions."   (*Id*., PageID.4.)

Bailey says that after an unspecified amount of time, he and Burton separated. (*Id.*)  Burton walked away from Bailey.  (*Id.*)  Bailey states that he attempted to step between the telephones in the yard, but Nelson shot him in the back with a "taser/weapon."  (*Id.*)  Bailey says he spun and landed on his back.  (*Id.*)  From the ground, Bailey says he looked up and asked Nelson, "Why he was doing this?" (*Id.*)  Nelson replied, "Move again and I'll light your black ass again."  (*Id.*)

Non-defendant CO Gonyou placed Bailey in handcuffs and escorted him to segregation.  (*Id.*)  When they arrived in segregation, CO Dave removed the taser probe from Bailey's back.  (*Id.*, PageID.5.)

Bailey says that he is fifty-four years old and that he suffers from debilitating medical issues.  (*Id.*)  Since the incident, he has had to use "mechanical aid" and has a pinched nerve in his neck that causes him pain.  (*Id.*)  He states that a muscle relaxer failed to address the pain he has experienced since the incident.  (*Id.*)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).   The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251–52 (1986)).   The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV.  Analysis

Bailey asserts that Defendant Nelson used excessive force in violation of the Eighth Amendment when Nelson tased him in the back on September 6, 2023. (ECF No. 1.)   Nelson argues that Bailey cannot maintain his Eighth Amendment excessive force claim because Nelson's use of force was necessary to regain control of fighting prisoners and protect the safety of individuals in their vicinity, the use of force did not offend contemporary standards of decency, and Nelson did not act maliciously.   (ECF No. 37, PageID.142.)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.   Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency."   *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).   The

4

Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* To establish an Eighth Amendment claim, a plaintiff must satisfy both a subjective and an objective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).

First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298). Courts must ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992). In making this inquiry, courts are guided by "factors [such] as the need for application of force, the relationship between the need and the amount of force that was used [and] the extent of injury inflicted." *Whitley v. Albers,* 475 U.S. 312, 320−21 (1986).

Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383. The objective component is contextual and therefore varies depending on the claim asserted. *Hudson v. McMillian*, 503 U.S. 1, 8−9 (1992). To satisfy the objective component, the degree of harm inflicted must be "sufficiently serious" to offend "contemporary standards of decency." *Williams*, 631 F.3d at 383.

Ultimately, prison officials have a legitimate interest in maintaining security, order, and in having prisoners obey orders.  *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992).   Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force "in a good-faith effort to maintain or restore discipline." *Jennings v. Mitchell,* 93 Fed.Appx. 723, 725 (6th Cir.2004).   It is well-established that the use of tasers on recalcitrant prisoners does not violate the Eighth Amendment.  *Caldwell*, 968 F.2d at 600–02 (collecting cases) (holding that the use of a stun gun on a prisoner who was ordered to stop shouting and kicking but did not comply was not excessive force); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's "interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors.").

At roughly 3:16 pm on September 6, 2023, Housing Unit 6 was releasing prisoners to the recreation yard.   (ECF No. 37-6, PageID.200 (Critical Incident Report by Acting Warden).)   Bailey states that while entering the yard, he approached prisoner Burton by the phones and hit him twice in the side and back of his head.   (ECF No. 1-6, PageID.39 (Bailey's Affidavit).)   Bailey states that Defendant Nelson ordered the two prisoners to stop fighting and that they immediately did so.   (ECF No. 1, PageID.4.)   Bailey says that after the prisoners

stopped fighting, he stepped away towards the phones.  (*Id.*, PageID.9.)   Nelson then drew his taser and shot the Plaintiff in the back.  (*Id.*)   Bailey says that the incident was a "racially motivated attack" because Nelson told him, "If you move again, I'll light your black ass up again."  (*Id.*, PageID.10.)   Bailey says that Nelson's actions were "deliberate and meant to inflict as much pain as he could inflict."  (*Id.*, PageID.11.)

In the supporting materials to his motion for summary judgment, Defendant Nelson provides video footage of the yard on September 6, 2023.   (ECF No. 40.)   The United States Supreme Court has held that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).   The Court cautioned that where video evidence is available, courts should "view[] the facts in the light depicted by the videotape."   *Id.* at 381.   In the opinion of the undersigned, no reasonable jury could believe Bailey's account of September 6, 2023, as it is blatantly contradicted by record.

In his affidavit, Nelson states that on September 6, he was monitoring the Housing Unit 6 recreation yard.   (ECF No. 37-4, PageID.173 (Nelson Affidavit).) Nelson says that he personally observed Bailey approach and strike prisoner Burton in the head and torso area.  (*Id.*)   Shown below is a screenshot of surveillance footage, including a yellow circle around Bailey, a green circle around Burton, and an orange circle around Nelson:



(ECF No. 40 at 00:07 (Surveillance footage identifying Bailey, Burton, and Nelson).)

Nelson says that he gave "several loud verbal commands to Bailey to stop fighting," but that Bailey continued to strike Burton with closed fists.  (ECF No. 37-4, PageID.173)  Nelson says that other officers were present and also commanded Bailey to stop fighting.  (*Id.*)

Video footage shows that after Bailey attacked him, Burton put his arm around Bailey.  (ECF No. 40 at 00:11.)  Bailey then wrapped both his arms around Burton and continued to struggle with him.  (*Id.*)  In his affidavit, Nelson says that he once again commanded Bailey to stop fighting.  (*Id.*)



(ECF No. 40 at 00:11.)

Nelson states that Officer Gagnon tried to break up the fight by grabbing Bailey's shirt, but was unable to stop the fighting.   (ECF No. 37-4, PageID.173.) Nelson says that he repeated loud verbal commands for Bailey and Burton to get on the ground.   (*Id.*)   Neither Bailey nor Burton complied with his commands.   (*Id.*) Nelson states that he unholstered his taser, activated it, and pointed it at Bailey. (*Id.*)



(ECF No. 40 at 00:16 (showing Gagnon reach out for Bailey's shirt and Nelson unholster his taser).)

Nelson says that he told Bailey once more to let Burton go, but he did not. (ECF No. 37-4, PageID.173.)   The screenshot below shows Nelson and another officer pointing their tasers at Bailey as he and prisoner Burton continue to wrestle:



(ECF No. 40 at 00:18.)

As the fight continued, Nelson says that he deployed his taser and aimed for Bailey. (ECF No. 37-6, PageID.217.) Nelson says that the taser probes struck Bailey in the lower back. (*Id.*) Video shows that Bailey, still in Burton's grasp, reached back and clutched at the spot the taser probes connected with his back. (ECF No. 40 at 00:22.) Burton released Bailey after the taser hit him. (*Id.* at 00:23.) Bailey fell to the ground, landing on his side and rolling to his back. (*Id.* at 00:23 to 00:25.)



(*Id.* at 00:22 (showing Nelson tase Bailey and Bailey clutch his back).)



(*Id.* at 00:23 (showing Bailey fall to the ground as Burton releases him).)



(*Id.* at 00:25 (showing Bailey on the ground beside Gagnon, Burton being escorted away, Nelson holding the taser still).)

Nelson says that after Bailey fell to the ground, officers handcuffed Bailey. (ECF No. 37-4, PageID.174.)



(ECF No. 40 at 00:26 (showing Gagnon start to handcuff Bailey).)



(*Id.* at 00:46 (showing Gagnon finish handcuffing Bailey as other offices stood by).)



(*Id.* at 1:07 (showing officers wait to escort Bailey away from the scene).)

Nelson says that fighting is a safety concern in the Level V general population yard.   (ECF No. 37-4, PageID.173.)   He states that prisoners typically outnumber the staff and that fights do occur during yard time because it is the only time of day where prisoners are free to move around the yard and interact.   (*Id.*)   Nelson states that using a taser is "a quick, safe method for staff to end a physical confrontation between prisoners without engaging in physical force."   (*Id.*, PageID.174.)   Nelson states that during the incident he "acted in good faith, within the scope of [his] authority, and in accordance with [his] understanding of the statutes, rules, and policies governing the Michigan Department of Corrections and the correctional facility."   (*Id.*)

In the opinion of the undersigned, there remains no genuine issue of material fact as to whether Nelson violated Bailey's Eighth Amendment right to be free from excessive force.   Bailey has presented no evidence that Nelson acted maliciously or

sadistically when he deployed his taser to stop the fight between Bailey and Burton. The video camera footage entirely contradicts Bailey's telling of events.   The U.S. Supreme Court held that a court should adopt the facts "in the light depicted by videotape" capturing the alleged excessive force.   *Scott*, 550 U.S. at 381.   The video shows that Burton was making a call when Bailey attacked him.   The footage shows that guards gave commands to stop fighting and attempted to tug the inmates apart, but that Bailey and Burton did not stop fighting.   The video confirms that Nelson had a valid penological reason to deploy his taser – ceasing the fighting between Bailey and Burton ongoing just feet away from a least a dozen other inmates.   Thus, there exists no genuine dispute of material fact which could support Bailey's claim of excessive force.

### V.   Qualified Immunity

Defendant argues that he is entitled to dismissal of the complaint against him based upon qualified immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was]

doing violate[d] that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.*  (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."  *Id.* (citing *Pearson*, 555 U.S. at 232).  A court may address these steps in any order.  *Id.* (citing *Pearson*, 555 U.S. at 236).  A government official is entitled to qualified immunity if either step of the analysis is not satisfied.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The court considers the state of the law at the second step.  As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 580 U.S. 73, 78 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must

be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63−64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate.   *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

The Defendant argues that because he did not violate Bailey's constitutional rights he is entitled to qualified immunity.  In any event, the undersigned agrees; because there are no genuine issues of material fact and it is the undersigned's opinion that the Defendant did not violate Bailey's Eighth Amendment rights, it is the undersigned's opinion that the Defendant is entitled to qualified immunity in his individual capacity. *See Phillips*, 534 F.3d at 538 ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow*, 457 U.S. at 818)).  The undersigned does not reach the second prong of the analysis here.

## VI.   Recommendation

It is respectfully recommended that the Court grant Defendant Nelson's motion for summary judgment and dismiss the case.

Dated:    August 4, 2025                                /s/ *Maarten Vermaat*
                                                      MAARTEN VERMAAT
                                                      U.S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   All objections and responses to objections are governed by W.D. Mich.

LCivR 72.3(b).    Failure to file timely objections may constitute a waiver of any
further right of appeal.    *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see
Thomas v. Arn*, 474 U.S. 140 (1985).